and I'll watch the clock and try and reserve two minutes for rebuttal. Can I wait on this issue? Thank you. Okay. Can we start the clock over? Your Honors, there's no real dispute on impeachment. The prosecution misstated the relevant law in closing rebuttal. The real issue here is prejudice and I'll focus on that issue. The prosecution's misstatements went to the very heart of this case. There was no dispute that Ms. Mai bought and sold meat during the suspension period. The trial came down to the issue of whether Ms. Mai processed the meat and then misapplied the USDA inspection label during the suspension period. There was no objection, was there, to that argument? There were no objections to the misstatements and that does two things. That gives us the higher standard of review, which is plain error, which this case meets, although it's a high standard. And another thing is that it actually exacerbated the misstatements because this court has looked before at a prosecutor's misstatements and made the point that if there's no objection to the misstatements, the jury has all the more reason to believe that the misstatements actually reflect the state of the law or reflect facts in the record because otherwise surely defense counsel and the court would have pointed it out. So that does go to the issue of prejudice. Well, let me just ask you this, what I'm trying to figure out from the standpoint and your argument would be stronger if the jury hadn't asked a question. So the judge does give an explanation as to they have a question about the law. So what could have happened where they could have convicted her wrongly since there was no objection during the prosecutor's argument? But then when the jury did ask a question, if the judge gave the correct answer, why doesn't that just fix it? And how could she have been convicted of something that was legal? Well, there were several misstatements and the jury's question only went to one of them. So the jury's question was about whether Ms. Mai could sell meat that she had processed before the suspension after the suspension. And the district court did answer that and cure that. But that actually shifted the focus to what Ms. Mai did with all of the raw meat. And what the prosecution had said was that nothing could happen during the suspension and that even Ms. Mai's uncontested purchase of pork on July 12th told the jury that it could convict on as little as a single purchase of meat. And it told the jury that basically any box-in, box-out sales activity was unlawful. But as the government concedes on appeal, those actions are not unlawful because they wouldn't involve an act of mislabeling. And so those statements never went uncured. And the jury's question shows that it was listening to Ms. Mai's defense. Defense counsel stood up and gave a two-pronged explanation of how Ms. Mai could buy and sell meat without misusing the inspection label. And both of those prongs were important because Ms. Mai had to account for the processed meat and what happened to the raw meat. And so defense counsel explained that the processed meat had been processed beforehand which wouldn't be a violation. So the jury had both theories before it, right? Right. But the defense was two-pronged. The jury had to decide how Ms. Mai ended up selling processed meat and what she was doing with the raw meat. What was actually her testimony, though? She didn't . . . she wasn't very specific while saying something about, I could have done this. But she doesn't state . . . she doesn't really develop that very firmly. She didn't testify, and of course there were major language issues. There were the statements that the USDA agent had prepared for her, and those were the ones where she explained how she had had reach-in freezers, where she kept processed product, and she explained that she had simply resold the raw meat box-in, box-out. And another important thing here is that the evidence on review is viewed, the totality of the evidence, and the inferences that the jury could have drawn. And as the defense counsel mentioned in its closing, and we've captured in the opening and the reply brief, all of the inferences from the government's own evidence could have been drawn in Ms. Mai's favor to support her defense that she simply sold preprocessed meat and sold the raw meat box-in, box-out. And of course, Ms. Mai could succeed by simply introducing doubt. She didn't have to prove her case with affirmative evidence. It was enough to introduce doubt. Well, but let me . . . okay, so the boxes of unprocessed pork product that Mai said she sold box-in, box-out, did any of those boxes have the USDA inspection labels on them? And if the boxes did not have that inspection label on them, doesn't it follow that at least counts three and four could not have been based on box-in, box-out sales? No. The government admits that there was no problem with box-in, box-out sales under the charging statutes. And the problem is there's an absence of evidence of what the box-in, box-out sales would look like. But the government's . . . here's two things. First of all, the government's theory was that Ms. Mai misused the USDA inspection label that was already imprinted on the processed meat bags. So in order to misuse that label, she would have to package the raw meat and the processed bags that have the USDA label. That doesn't make sense. The point with box-in, box-out sales is that she's receiving the meat, she's buying it from a wholesaler, turning around and selling it as it is to another retail customer. But in those counts, the jury found that Mai guilty of falsely representing that meat had passed inspection by the Department of Agriculture. If they had passed inspection when she bought them, that wouldn't involve an act of mislabeling. And again, I think it's really important that the government concedes that there's no problem with box-in, box-out sales, but we don't know what the jury relied on. And the prosecution specifically told the jury that it could convict on as little as Mai's uncontested July 12th purchase. And I think context is really important here. The major prejudice from these misstatements can really be encapsulated in the excerpts of record from page 459 to 461. The defense counsel stands up and gives a legally valid complete defense for Ms. Mai. I guess, but I'm still, what didn't the judge cure based on the question specifically? Sure. The judge never explained that box-in, box-out sales were legal and the judge never explained that the prosecution made a misstatement that the single purchase of meat constituted a violation. Was there anything wrong with the law the judge gave? There wasn't, but this court has held time and again that general jury instructions are not enough to cure specific misstatements. What's your best case that they have to call out? The jury also got that what counsel says is not correct. So what's your best case to say you have to call out specifically what the prosecutor said wrong, that you don't just have to give the correct law? United States v. Sanchez, which both we and the government cited in our briefs, goes through a detailed list of the cases where general instructions have actually been able to cure. And those are very few and they involve very minor misstatements. And U.S. v. Sanchez says it's not enough to simply have general instructions when it doesn't actually specifically go to the misstatement. And that is true again in Deck v. Jenkins cited in our brief that involved a misstatement of the governing law. It's true in United States v. Artis in our brief and in Zapata v. Vasquez, which we cited in the 28J letter. And I think it's interesting that the government actually hasn't cited any case where the prosecution's misstatements of the magnitude here have been cured by general instructions. It simply says compared to these cases that we had cited in our opening brief. So I would say the weight of authority that was cited clearly is in favor that general instructions do not cure specific misstatements. You said just a couple of minutes ago that the judge never explained that box in, box out was not illegal. Is that right? That's correct. One, is that encompassed by the general instructions? In other words, the charge made in the case, it didn't, I mean, the government didn't put forth that theory. That was Ms. Mai's defense and it was a legally valid defense. Alright, so did you ask for an instruction? She didn't because the instruction said you have to have an act of mislabeling. But because the prosecution. So at that point, it was your position that the instructions the government offered was sufficient to explain the law to the jury on the box in, box out evidence? In other words, you're complaining that the judge should have explained that. At what point did that explanation become necessary? I think that explanation should have been given. Really the problem is defense counsel should have objected. And that's why we have the plain error standard. And so the focus goes from what the district court actually should have cured to the fact that a very prejudicial misstatement was made and what are the ramifications of that error. And here, it would have impeded the ability of the jury to view the evidence fairly. Well, first of all, the jury never asked a question about the box in, box out, did it? Specifically? No, it did not. Right. So there was no note that the judge would have sent in because there was no question the jury asked, right? On the box in, box out. That's right. The judge probably didn't catch on that the jury could have been confused about that. But defense counsel should have made an objection because that was a clear misstatement of the law that those acts that, you know, any buying and selling could be a violation. And then that did clear that up, right? No, the judge just cleared up that Ms. Mai could sell meat that she processed before the suspension. So that shows that the jury was listening to her defense that she just sold pre-processed meat, but then its focus would have shifted to box in, box out. And that's where the prosecutor had already said, even if she did sell it box in, box out, it's a violation. Her single purchase was a violation. How does it become a plain error for the district court not to instruct the jury on the box in, box out? In other words, that's illegal. Well, you know, our argument on appeal isn't about the role of the district court's jury instructions. We're just pointing out that the prosecutorial misconduct in misstating the law at closing and the cases make clear that the focus isn't on the role of the district court. The focus is on did the prosecution make a misstatement of law, which the government concedes it did. So you're not complaining about the trial judge not explaining to the jury that box in, box out was legal? Well, it exacerbated the problem, but this is really a question about the prosecutorial misstatements. Got you. Okay, thank you. Good morning, Your Honors. May it please the Court? My name is Mary Jean Chan and I represent the United States in this appeal. The first thing I'd like to do is to clarify what the misstatements actually were. There was a misstatement, Your Honors, and it specifically had to do with whether Mai was allowed to sell meat that had been processed pre-suspension. The government concedes that that was a misstatement, but it was squarely and fully corrected very shortly after the statement was made by the jury instructions, which, by the way, the defense counsel actually didn't want. They didn't want clarification. It was only at the insistence of the prosecution that the district court gave that instruction. There was no misstatement regarding the box out theory. It wasn't a basis for the mislabeling. But did the district court's supplemental instruction clarify that Mai could not be convicted for selling boxes of unprocessed pork during the suspension? Did it clarify that? It said, a meat that has been inspected and has passed inspection may be made available for sale after suspension unless it has been tagged for retention. A product that has not been tagged for retention is a product that has not been tagged for retention, and that's that excerpt of record 489. So it was really tailored to the suspension of the products and not to, I think, the box in. But I think Ms. Sparrow's saying that there's a possibility, because box in, box out would be okay, right? Box in and box out. She would be allowed to do that. And so what they were saying was that So what's the probability that the jury convicted her of that based on what the curative instruction doesn't specifically address box in, box out? Can we rule that out? None, Your Honor. Yes, absolutely, Your Honor. And how do we rule that out? Because if you look at what the prosecutor stated about the box in, box out theory, that's that excerpt of record 463. 463? 463, yes. That's that part of the rebuttal that he addresses box in, box out. He doesn't say that that's not something she was allowed to do. What does he say in 463? He says that even if you credited the box in, box out theory, there's still the proof that she sold What line are you on? Pardon? What line am I on? Okay, it's at line 9. Even if 2,400 pounds of raw product was sold box in, box out, that doesn't change the fact that she sold products post suspension. But then it goes on to explain what he means by product. The product that she sold post suspension was invoices from Maxim and then invoices from Dayton, the two supermarkets where she sold not raw pork, but the processed shredded pork product that was bagged in the bags that had the mark of inspection from the USDA, the EST 6488. So the prosecutor in that case is not talking about box in, box out as a theory, sort of saying even if she sells these box in, box out, that's a violation. There's no mislabeling. As defense counsel or opposing counsel stated, the government What exact evidence did she present at trial that she was selling box in, box out? There was none, almost. I'll just say this, which is the only way it came in was during cross-examination of Inspector Horry when the defense counsel said, did Mai say to you that she sold approximately 900 pounds of this meat, of the 3,000 pounds box in, box out? He said, yes, she mentioned it and there was nothing else beyond that. Also, the other piece of evidence is in the statement, the July 13th statement, and that's at Supplemental Chips of Record 21, where she says not I sold all of it. She says, I also sold some intact cases of raw pork products that I got from my two suppliers. So there's nothing in the case that suggests that she sold all 3,000 pounds of it. So in fact, if you credit everything that she said, the little sort of miniscule evidence. Is there also some evidence that she had frozen food storage capacity at her home? Yes, but there's nothing that says that what she stored there was processed prior to the suspension. Or that it was box in, box out? Or that it was box in, box out. There was nothing. It was simply that I had some stuff there. She told Inspector Horry, I stored some food there. He told me, you can't do that. I won't. Let me ask you this. Okay, you concede error. If the jury had not asked a question, and the judge had not given that instruction, would Ms. Sparrow have... She would have a stronger case. A stronger case, yes, but that isn't what we have here. We do have the question. The jury was very perceptive. The government immediately asked for a full and fully corrective instruction on this. And so they were correctly instructed on the only misstatement. I think Ms. Sparrow does try to conflate the two things by saying that there is this kind of very broad misstatement that goes to the box in, box out theory, and that's just not true. And I urge the Court, to the extent that I haven't been clear about this, to review the actual rebuttal, the page that I referred to earlier. What it says is simply, and the misstatement that we fully concede is that she wasn't permitted to sell product that was approved pre-suspension. So what are you saying? You're saying in the closing argument, government never took any position on box in or box out? No. I shouldn't say never took any position. I never asserted that the charge that was being tried had anything to do with box in and box out. No, no. Our addressing of the box in, box out theory was, even if you credit that, look at what she did. She definitely sold the processed meats that were packaged in the packages that had the EST 6488 post-suspension. And that you should believe that in light of the fact that, even if you credit her argument, that there's still 1,500 pounds of raw pork back skin that's unaccounted for, that she was producing new product after the suspension date and then selling it. You mean from that 1,500 pounds? Right. Even if you credit her, there's still at least 1,500 pounds of meat that's unaccounted for. And it's not just random meat. It's specifically the main ingredient for the processed skin. The second part of the government's position is that the only misstatement of the law that was made by the AUSA was corrected by the court's answer to the jury's question. Fully. So both prongs for the substantial rights. That's why the misstatement didn't affect her substantial rights under the plain error standard, because you have a full correction on the jury's. And Ms. Spiro mentioned that these instructions weren't enough because they weren't just the general set of instructions that were given to the jury right after closing arguments. They went to deliberate. They came back with a specific question, and the instruction was specifically formulated to address that question. It was specifically on the exact issue of the misstatement that the prosecutor makes. So it is specific. Well, so I think that that's part of the appellant's I think it could have gone further than that, but I think that it's clear in the context of this. This is a single misstatement in a very short rebuttal. It was a four-page rebuttal. And the gravamen of the rebuttal was, look at the evidence. We don't credit what the speculative sort of explanations for the defense are. Look at the evidence. It had one single misstatement. This misstatement was picked up on by the jury. It was corrected fully. I mean, it was a very full correction of that. Tell me again how we can be sure that she wasn't convicted on box-in, box-out. Box-in, box-out isn't a basis for mislabeling or misrepresentation because the government never said that she put... I think I asked her that question because on, what, three was it counts three and four that are the same, let's see, counts three and four, you're saying those could not have been based on box-in, box-out because they had USDA inspection labels on them? Well, first of all, there was no evidence about what was on those boxes. In fact, we know off the record that they had USDA inspection labels on them not even from the wholesaler, but from the butcher, basically. So there's no misrepresentation because she's not saying that they have been passed or haven't been passed. But in any case, there's no evidence about what's on these boxes. She simply says she buys these boxes and then she turns around and sells them to some restaurant suppliers. There's no evidence whatsoever about what labeling there might be or might not be on those boxes. So the jury couldn't rationally... But what I'm sure her statement said, the evidence of box-in, box-out, what the basis for the argument that appellant was, you know, that she was making to the defendant was based on her statements because she didn't testify and you said one point in cross-examination? It was a single point in cross-examination where... But also she made a statement previously, right? She made the statement that was the July 13th statement. So she made a confession, and that's a very key point, which is the evidence is strong because she confessed to making these products post-suspension. And it's very clear that she does. And that's a supplemental excerpt of record, I believe, 18. I then sold the unexpected pork products that I made to our retail customers. But when she says that I sold also some of the product, some of the boxes of meat that I got, she doesn't say I sold all of it. She says, yes, I made some product post-suspension, and then I also sold some of the boxes intact. So she never says that this fully covers all of her conduct. And if she isn't, what she's doing is she's producing product post-suspension and then selling to customers, and we had evidence of that. When did the government realize that it had made an error in the closing argument? This isn't in the record, Your Honor. I've spoken to the prosecutor who made the argument. Do you really want to know this if it's not in the record? I was asking whether you were suggesting that in the rebuttal argument he cured the error. No, he didn't cure the error in the rebuttal. So there's no error in the closing argument, Your Honor. It's only in the rebuttal, so not the opening-closing argument. In fact, the government didn't even understand or anticipate that there was a box-in. But you pointed to when he said even if the boxes, box-in, box-out. That was in the rebuttal argument, Your Honor. But you're not suggesting that cured the error? I don't think there was any error on the box-in, box-out theory, Your Honor. There's two errors that the defense is claiming. One has to do with the selling of meat that was processed before suspension, but it was processed meat. But is this anything that she did after the suspension? No, I don't think it was as broad as that they're portraying it, Your Honor. The misstatement was that she wasn't allowed to do anything with respect to processing of meats or selling of processed meats. And it had nothing to do with the box-in, box-out. That was a separate statement. But in any case, the evidence shows that there was no basis for the box-in, box-out theory to be a basis for the conviction. I see I've run out of time. If the Court doesn't have any additional questions... And what I want to just get clear was, you're saying that you do agree there was an error, and that error was not corrected by the prosecution. No, no, I disagree, Your Honor. I believe there was an error as to the pre-suspension processed meats, and that error was corrected by the district court's instruction at the prosecution's urging. You said you conceded there was an error, and it was not corrected by the prosecution. You say, no, that's not correct. It was corrected by the judge. At the prosecution's urging, Your Honor. I may have misunderstood, and if I did, I was trying to make a distinction between that error versus the broader error that Defense Counsel urges regarding the box-in, box-out theory. You're saying there was no box-in, box-out error. Correct. You're saying the error was as to the post-suspension. Pre-suspension processed meats. Pre-suspension processed meats. Yes, exactly, yes. That's true, that's true. But that doesn't really matter. It's just a question of whether that cured what was said. But when it was raised, the defense said, don't answer anything. We don't think anything needs answering. And the prosecution said, no, no, let's correct this. And the district court did correct it. And that, combined with the strong evidence in this case, means that . . . It could have been stronger, Your Honor, but I think in this case it was fully adequate and squarely addressed the misstatement. We ask for an affirmance there was no plain error in this case. Thank you, Your Honors. Thank you both for your argument in this matter. I don't know, do you? Do you want one minute? The government overlooks the main misstatements for purposes of prejudice on appeal. And it's at excerpts of record 460 to 461. The prosecution got up in response to the defense theory that Ms. Mai sold box-in, box-out meat of all the raw meat. The prosecution said, even if you believe what she just argued, that doesn't equal a not-guilty story. And went on to say, you have Linda Mai's delivery from Jim's Wholesale Meats on July 12, 2010. That is a violation right there. That was never cured. Wait a minute, I thought that argument was, even if you believe the box-in, box-out, it doesn't account for all the meat. And there was still some processed meat. Isn't that the argument? No, our argument is that there were several misstatements and only the one about the preprocessed meat was cured. Because that part, the part you're referring to says, you know, like they sold finished product, right, at the same time? Well, he said now, even if you have product that was processed pre-suspension. So even if you believe, Mai, that all the meat she, you know, had sold processed was processed beforehand, you still have her purchase of raw meat. And that's a violation right there. But what was Linda Mai's transaction? I'm sorry? You said the prosecutor responded with Linda Mai's transaction. Was that a box-in, box-out transaction? The purchase would have been a box-in, box-out. No, but did it, but the purchase would have been, but what else happened? Is she in those 9,000, what, there was, what was it, 9,000? 900. The 900 is a red herring, as we addressed in our reply brief, because that was actually a figure that came in a question to Horry, and he clarified that she might have sold all the raw meat she bought, box-in, box-out. So she accounted for all the raw meat she bought, and this statement on page 461, lines 5 to 8, is the most prejudicial. Because it says, even if she processed all the meat beforehand, she still bought meat on July 12th. That was uncontested. That is a violation right there, which says. That's the same violation. No, that's a violation of justifying court. Not the same violation, but the same misstatement, just a repetition of the misstatement that appears on 460, isn't it? No, because the. How is it different? The other misstatement says that even if she processed it beforehand, she couldn't sell it after. That's the misstatement that was cured. The prosecution said, well, you can't process it before and then sell it after. Well, and line 5 talks about even if the product was processed pre-suspension. Yes. It's the same period. Right. I mean, it's a very. The difference. So, now the prosecutor is saying, we don't even need to show sales of processed meat. Because even if it was processed beforehand, and you believe that from Ms. Mai's defense, she bought raw meat on July 12th. She can't be doing that because nothing is supposed to happen during the suspension. That's another very general misstatement. And Ms. Mai wasn't prohibited under the charging statutes from buying and selling meat. And certainly her one purchase of meat on a single occasion was not a violation. And this was not a straight comment. This was the prosecution's attempt to legally foreclose Ms. Mai's defense. So, it stood up, and instead of factually arguing. But why doesn't the instruction given by the judge cure the fact? Why doesn't that instruction say just buying meat is not a violation? It seems like it does. No, because it goes. It's very specific that if meat, any meat that's processed beforehand can be sold after the fact. And that's about processed meat. Here in the closing, the prosecution said even her single purchase of raw meat, that's a violation. Because she can't do anything during the suspension. But how doesn't that instruction cure that? The instruction seems to cure that. No, because the judge was talking about what she could do with processed meat. If it was processed before, she could sell it after. And the jury could have had in its mind that, okay, Ms. Mai pre-processed meat, so her sales of processed meat weren't problematic. But she still hasn't accounted for all of her purchases of meat, which the prosecution just told us is a violation. I guess if it's so plain, counsel for the defendant didn't see it in the argument, didn't want it at the answering the question, and... And that's a major problem. And that's why... No, but it's like it wasn't so plain to that person. Well, I don't think we can read that in. I mean, I think that could be just ineffective assistance, which we're not bringing up. It could be that you think the jury's confused and you just want to go with that. That's why we have plain error. And so the standard of review really takes care of why wasn't there an objection, because now we're facing a higher standard of review. And going back to one of my initial points, the fact that it wasn't objected to lent credibility to the prosecution's statements that Ms. Mai couldn't do anything and a single purchase of meat was a violation. So that never went cured, and that's why this is prejudicial misstatements. Thank you, Your Honors. Thank you, counsel. The case is arguably submitted.
judges: Reinhardt, Tashima, Callahan